UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIA VELEZ,<br>           Plaintiff, | : <br> : <br> : |
| v. | :    No. 5:15-cv-1543 <br> : |
| READING HEALTH SYSTEM, t/a READING HOSPITAL,<br>           Defendant. | : <br> : <br> : |

**MEMORANDUM OPINION**
(Non-Jury Trial – Verdict for Defendant)

**Joseph F. Leeson, Jr.**                                                                    **April 27, 2016**
**United States District Judge**

### A.     INTRODUCTION

This is a medical professional liability action. The case was tried non-jury from March 7, 2016, through March 9, 2016, inclusive. Pursuant to Federal Rule of Civil Procedure 52(a), this Memorandum Opinion sets forth the Court's findings of fact and conclusions of law.

### B.     FINDINGS OF FACT

1. Plaintiff, Maria Velez, was born on September 5, 1959.

2. Ms. Velez's first language is English, but she also speaks Spanish.

3. On May 6, 2013, Ms. Velez was admitted to Reading Hospital for left total knee replacement surgery.

4. At approximately 10:30 p.m. on May 6, 2013, hours after her surgery, Ms. Velez got up from a recliner in her hospital room, walked to her bed, and got into bed, all without assistance. This undisputed fact conflicts with the opinions of Plaintiff's expert witnesses, Richard Matza, M.D., and Elisabeth Ridgely, M.S.N., R.N., C.C.R.N., L.N.C.C., that on May 7,

1

2013, Ms. Velez was essentially incapable[1] of moving herself from the center of the bed, to the side of the bed, to a standing position without assistance.[2]

5. On the night of May 6, 2013, Ms. Velez was reeducated on the hazards of getting into and out of a chair or bed without assistance.

6. On May 7, 2013, Kevin Meitzler, a student nurse from the Reading Hospital School of Health Sciences, was assigned to assist with the care of Ms. Velez.

7. Mr. Meitzler was studying to become a registered nurse and was in his third semester of nursing school.

8. Mr. Meitzler had already successfully completed classes on how to assess patients, on bathing patients, and on patient safety.

9. On May 7, 2013, Nancy Covach, R.N., was overseeing Ms. Velez and Mr. Meitzler while the assigned nurse was in a meeting.

10. Nurse Covach has been a registered nurse in orthopedics with the Joint Care Center for twenty-six years.

11. Late in the morning on May 7, 2013, Mr. Meitzler offered to assist Ms. Velez with a sponge bath, to which she agreed.

12. While in bed, Ms. Velez washed her face and Mr. Meitzler helped her in washing the upper half of her body.

13. Mr. Meitzler asked Ms. Velez if she wanted assistance washing her perineal area, but she declined.

---

[1] Dr. Matza testified that it would be "virtually impossible" for Ms. Velez to get down from the middle of the bed. Nurse Ridgely opined that Ms. Velez required the assistance of at least one person to move from one side of the bed to the other side of the bed.

[2] Nurse Ridgely testified that this information did not factor into her opinion, while Dr. Matza testified that this fact would change his opinion to some degree.

14. Mr. Meitzler refilled the water basin and put it on the over-the-bed table.

15. Mr. Meitzler removed Ms. Velez's knee immobilizer while she was in bed so that she could access her perineal area.

16. Mr. Meitzler instructed Ms. Velez not to get out of bed and to ask if she needed help. Ms. Velez acknowledged Mr. Meitzler's instructions.

17. Mr. Meitzler stepped behind the privacy curtain hanging next to the bed.

18. While he was standing behind the curtain, Mr. Meitzler again instructed Ms. Velez not to get out of bed and to ask if she needed assistance.

19. Mr. Meitzler heard movement in the bed and noise from the over-the-bed table.

20. When he heard the movement and noise, Mr. Meitzler opened the privacy curtain to find Ms. Velez on the floor.

21. Nurse Covach was at the nurses' station directly across the hall from Ms. Velez's hospital room when she heard a noise and heard Mr. Meitzler call for help from Ms. Velez's room.

22. Nurse Covach immediately responded. When she entered the room, Nurse Covach saw Ms. Velez on the floor and Mr. Meitzler standing beside her.

23. Nurse Covach asked Ms. Velez what happened and Ms. Velez reported that she got out of bed on her own and tried to stand up to pull her pants up, her leg gave out, and she fell.

24. Nurse Covach recorded Ms. Velez's statement in the medical chart at 12:28 p.m., within approximately two hours of the fall. Trial Ex. J01-40.

25. Ms. Velez gave contradictory testimony at trial, which the Court finds not to be credible, by testifying that on May 7, 2013, she fell, pulling Mr. Meitzler down with her, after he had her stand up and removed her knee immobilizer while she was standing.

26. Ms. Velez was scheduled for physical therapy later in the day on May 7, 2013.

27. Contrary to Ms. Velez's testimony that she was wearing a hospital gown, Ms. Velez was wearing black capri pants at the time of the fall.

28. Nurse Ridgley, a legal nurse consultant whose occupation is to testify as an expert witness, testified that it was highly unlikely that Ms. Velez was wearing pants; however, on cross-examination, Nurse Ridgely admitted that she had never worked on an orthopedic floor and did not know what patients wear the first day after surgery.

29. Dr. Matza testified that he had never seen a patient wear pants one day after knee replacement surgery and that it was irrelevant the patient was scheduled for physical therapy.

30. Conversely, Jane Marek, D.N.P., M.S.N., R.N., testified that Dr. Matza's testimony is not consistent with her experience and that it is uncommon for patients to go to physical therapy without wearing pants.

31. Laurence Wolf, M.D., testified that he had never seen a patient wear tight stretch pants shortly after surgery, but that some patients wear pajamas to be more comfortable.

32. Ms. Velez was not credible as to the events which happened on May 7, 2013.

33. Mr. Meitzler and Nurse Covach were credible as to the events which happened on May 7, 2013.

34. As a result of the fall, Ms. Velez's incision from her knee replacement was reopened and she had to undergo a second surgery to irrigate and close the wound on May 7, 2013. It was subsequently determined that Ms. Velez had sustained a periprosthetic displaced fracture of her left distal femur.

35. Dr. Matza, Plaintiff's medical expert, and Dr. Wolf, Defendant's medical expert, agreed that the knee immobilizer did not have to be worn while Ms. Velez was in bed.

36. Dr. Marek, who testified as an expert in nursing care, teaches medical students how to assess and bathe patients.

37. Dr. Marek opined that removing Ms. Velez's knee immobilizer while she was in bed did not violate the standard of care, explaining that it was appropriate to remove it while bathing for hygiene purposes.

38. Dr. Marek opined that it was not a violation of the standard of care for Mr. Meitzler to go behind the privacy curtain after instructing Ms. Velez not to get out of bed.

39. The Court finds the testimony of Dr. Marek as to the nursing standards of care to be truthful, accurate, and persuasive.

40. The expert testimony of Dr. Marek and Dr. Wolf was more credible than the expert testimony of Dr. Matza and Nurse Ridgely.

## C.  ANALYSIS

### 1.  Review of Applicable Law

Under Pennsylvania law governing medical professional liability actions, the plaintiff must prove that: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the proximate cause of plaintiff's harm; and (4) the plaintiff suffered damages as a direct result of the harm.  Keating v. Coatesville VA Med. Ctr. (Estate of Keating), 498 F. App'x 181, 184 (3d Cir. 2012) (citing Martin v. Evans, 711 A.2d 458, 461 (Pa. 1998)); Maresca v. Mancall, 135 F. App'x 529, 531 (3d Cir. 2005).  Additionally, the plaintiff must "'present an expert witness who will testify, to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered.'"  Estate of Keating, 498 F. App'x at 184 (quoting Mitzelfelt v. Kamrin, 584 A.2d 888, 892 (Pa. 1990)).

The Pennsylvania courts "recogniz[e] respondeat superior as a basis for hospital liability." Thompson v. Nason Hosp., 591 A.2d 703, 707 (Pa. 1991) (citing Tonsic v. Wagner, 329 A.2d 497 (1974)). The Pennsylvania Superior Court also "adopted the theory of ostensible agency, when it held that the trial court erred in failing to instruct the jury that it could find the hospital vicariously liable for negligence of a physician." Thompson, 591 A.2d at 707 (citing Capan v. Divine Providence Hospital, 430 A.2d 647 (Pa. Super. 1980)). Further, a hospital may be liable under the doctrine of corporate negligence, "under which the hospital is liable if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital." Thompson, 591 A.2d at 707.

Here, Ms. Velez filed a certificate of merit ("COM") stating:

> an appropriate licensed professional has supplied a written statement to the undersigned that there exists: a) a reasonable probability to conclude that the care, skill or knowledge exercised or exhibited by the above-named defendants in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about harm to the plaintiff ; and/or b) that other licensed professionals for whom the above-named defendants are responsible deviated from an acceptable professional standard.

COM, ECF No. 2. Accordingly, Ms. Velez claimed that Defendant, Reading Health System, t/a Reading Hospital, is directly and vicariously liable. See Refosco v. United States, No. 10-1112, 2011 U.S. Dist. LEXIS 51584, at *16 (W.D. Pa. May 12, 2011) (explaining that when proceeding under a direct theory of liability, the COM must certify that: "an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice, or work that is the subject of the complaint fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm" (citing Pa. R. Civ. P. 1042.3(a)(1)); Weaver v. Univ. of Pittsburgh Med. Ctr., No. 08-411, 2008 U.S. Dist. LEXIS 57988, at *24 (W.D. Pa. July 29,

6

2008) (determining that the COM recited "the language of a vicarious liability claim, e.g., 'allegations that other licensed professionals for whom the Defendant is responsible deviated from acceptable professional standards'").

      2.      <u>Factual and Legal Analysis</u>

The parties agreed that Defendant owed Ms. Velez a duty of care, that her fall was the proximate cause of the injuries she sustained, and that Ms. Velez suffered damages as a direct result of her fall. Accordingly, the only element Ms. Velez had to prove to establish her medical professional liability claim was that Defendant breached the duty of care it owed to her.

Plaintiff and Defendant offered two different versions as to how Ms. Velez's fall at Reading Hospital on the morning of May 7, 2013, occurred.

Ms. Velez alleged that she was assisted out of bed by Mr. Meitzler, he had her stand up, and that while she was standing, Mr. Meitzler removed her knee immobilizer. When he failed to properly support her, she fell on the floor, pulling Mr. Meitzler down with her, sustaining injury.

Defendant asserted, in contrast, that Mr. Meitzler removed Ms. Velez's knee immobilizer while she was in bed and that she subsequently got out of bed and stood up on the floor on her own, despite being warned twice not to do so.

Both parties agree that at the time of the fall, the knee immobilizer on Ms. Velez's left knee had been removed by Mr. Meitzler.

The Court finds Defendant's witnesses and version of events to be credible and the testimony of Ms. Velez and her evidence to be not credible.

One of the factors the Court deems of importance in weighing the credibility of the parties was the testimony of Nurse Nancy Covach, who was working at the nurses' station directly across from Ms. Velez's room at the time of the fall. Upon hearing a noise coming from

Ms. Velez's room, including Mr. Meitzler calling for help, Nurse Covach immediately went to Ms. Velez's room. She saw Ms. Velez on the floor and Mr. Meitzler standing beside her. Nurse Covach asked Ms. Velez what happened, and Ms. Velez stated that she got out of bed and stood up on her own, in order to pull up her capri pants, which had previously been lowered to facilitate washing. Nurse Covach entered this statement made by Ms. Velez in the hospital chart within a few hours of the fall. The Court finds this evidence to be important and credible as the statement was made by Ms. Velez at the time of or immediately following the occurrence of the fall. Nurse Covach made an entry into the hospital chart of this statement by Ms. Velez within two hours of the giving of the statement by Ms. Velez. See Trial Ex. J01-40.

Another factor the Court considers in deciding the credibility of the parties is the undisputed fact that on the evening of May 6, 2013, Ms. Velez got up from a recliner chair, walked over to her hospital bed, and climbed into bed, all without assistance. This fact contradicts the testimony of Plaintiff's expert witnesses that on the morning of May 7, 2013, Ms. Velez would not have been physically capable of moving from her bed to a standing position on her own. This is important because it makes Defendant's version of the events plausible while casting doubt on the testimony of Plaintiff's experts, who admittedly failed to consider this information in rendering their opinions.

In weighing the credibility of the parties' expert witnesses on the nursing standard of care, the Court considers the background, training, and experience of Dr. Marek and Nurse Ridgely. The Court finds the expert testimony of Dr. Marek, who has extensive experience with, and trains medical students in, patient safety, to be accurate, credible, and more persuasive than the testimony of Nurse Ridgely, a legal nurse consultant.

Having accepted Defendant's version of the facts as true and the expert opinion of Dr. Marek as persuasive, the Court determines that Mr. Meitzler did not violate the standard of care by removing Ms. Velez's knee immobilizer while she was in bed, nor did he violate the standard of care by stepping behind the privacy curtain after advising Ms. Velez not to stand up and to ask if she needed assistance.  Accordingly, Ms. Velez failed to meet her burden of proving that Defendant is liable for the injuries she sustained in her fall at Reading Hospital on May 7, 2013.

It is unnecessary to make findings of fact and conclusions of law regarding damages.  See Tarnoski v. United States, No. 3:04-0060, 2007 U.S. Dist. LEXIS 33627, at *13 (M.D. Pa. May 8, 2007) (stating that "it is not necessary to make findings of fact and conclusions of law related to the questions of damages" where Plaintiff is barred from recovery).

**D.    CONCLUSIONS OF LAW**

1. Defendants did not violate the standard of care on May 7, 2013.

2. Plaintiff failed to prove by a preponderance of the evidence that Defendants breached any duty of care.

3. Plaintiff failed to establish a claim for medical professional liability against Defendants.

4. Defendants were not negligent.

5. Judgment is entered in favor of Defendants and against Plaintiff.

A separate Order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge